THOMAS B. HOLCOMB AS ADMINISTRATOR, ETC., OF HOMER HOLCOMB, DECEASED, APPELLANT, *v.* FRIEND H. HOLCOMB, RESPONDENT.

*Code of Civil Procedure,* § 829 — *when the next of kin may testify as to personal transactions and communications of the deceased — right of the appellate court in equity cases to disregard errors in excluding evidence.*

In an action by an administrator to set aside an assignment of a mortgage made by his intestate, the next of kin, though interested in the event of the action, and claiming their rights through the plaintiff, are not prohibited, by section 829 of the Code of Civil Procedure, from testifying, in his behalf, as to what they had noticed and observed in the conduct and actions of the intestate, and as to personal transactions of his with which they had no connection, and also as to communications made by him to others in their presence without any inducement, suggestion or participation on their part.

*Quære,* as to the right of an appellate court to disregard, in equity cases, the erroneous exclusion of evidence offered by the appellant, on the ground that the result would not have been changed had such evidence been received.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

*Griswold & Crowell,* for the appellant.

*King & Hallock,* for the respondent.

BOCKES, J. :

This action was brought to set aside an assignment of a bond and mortgage, on the ground of the incapacity of the assignor to make it, and also of undue influence exercised upon him by the defendant, the assignee.

The action is by the administrator of the assignor, Homer Holcomb, who died at an advanced age at the residence of his son, the defendant, with whom he had lived for several years preceding. The deceased left him surviving eight children, including the plaintiff and defendant, and also five grand-children, the children of a deceased daughter. The bond and mortgage in controversy constituted all, or substantially all the property held by

the deceased at the time of its transfer. The assignment bore date April 1, 1875, ten months prior to the intestate's death, but was witnessed and its execution was acknowledged before an officer only a few hours before his decease. No money or other consideration passed at this time. On the question as to the intestate's incapacity to make the assignment, and as to undue influence exercised over him by the defendant, much evidence was given by the respective parties; and it is very obvious, even on the general facts as disclosed by the proof, that a serious question was presented for determination by the trial court. Now, even if it be admitted that the preponderance of the proof submitted was in favor of the assignor's capacity, and supported the defendant's position that the transfer of the bond and mortgage was his free, unbiased act and deed, still a question of law upon the rejection of evidence is here presented for our consideration which, if determined in favor of the appellant, will require a new trial. Evidence offered by the latter was excluded against his exception. If that evidence bore upon the question of the assignor's incapacity to do the act challenged by the appellant, or upon the question of alleged undue influence in that regard, he was entitled to have it considered. He may insist that it was by reason of the absence of the excluded evidence that his adversary was enabled to hold the preponderance of proof against him. It will not be held in a case like this, where the decision rests upon proof, other than that which is absolutely conclusive against the party, that he is not injured by its exclusion. If the evidence offered by him be competent he is entitled to the benefit of it; and its rejection becomes substantial error. The rule in this regard is the same in an equity case as in a case at law. The idea of a different rule, recognized in some cases, has recently received rebuke. In *Hobart* v. *Hobart* (62 N. Y., 81), which was an equity case wherein the questions at issue were precisely the same as those here presented on the pleadings, it is said: "The case stands for review here in respect to exceptions to decisions upon such questions" (questions as to the admission or rejection of evidence), "substantially the same as an action at law when tried in the same manner." So it was held in *Foote* v. *Beecher* (8 Weekly Dig., 520), that there was no distinction between legal and

equitable actions in respect to the availability of exceptions to the admission or rejection of evidence. These cases have very much limited the effect of some former decisions, if, indeed, not absolutely overruled them. (*Forrest* v. *Forrest*, 25 N. Y., 501; *Clapp* v. *Fullerton*, 34 id., 190; *Church* v. *Kidd*, 3 Hun, 254; *Platt* v. *Platt*, 2 Sup. Ct. Rep. [T. & C.], 25. See also MSS. opinion in *Schoonmaker* v. *Wolford*, decided at this term,* wherein section 1003 of the Code of Civil Procedure is referred to and commented on.)

Now, on the trial of this case, with a view to show the intestate's incapacity and inability to resist sinister influences, various questions were put to witnesses interested in the event of the suit as his next of kin. The questions were objected to, and excluded under section 829 of the Code of Civil Procedure, because, as was held they called for personal transactions or communications between the witnesses and the deceased. The questions were of two classes — one as to what the witnesses had observed in the actions and conduct of the intestate bearing on his mental condition, with which actions and conduct the witness had no connection other than to notice or observe them — the other as to remarks and expressions of the intestate made by him when talking to himself, and in conversations with other persons in the presence of the witness, but in which conversations the latter took no part. In ruling upon these questions, the learned judge stated the ground of his decisions to be that, " as the witnesses must, in answering them, detail impressions made upon their minds by the action, conduct and appearance of the deceased, * * * they must * * * be deemed personal communications between the deceased and the witnesses ; " and, therefore, inadmissible under section 829 of the Code. He, therefore, excluded both classes of questions. Was this ruling sound in law ? Section 829 of the present Code is a substitute for section 399 of the former Code; and while it has effected or introduced some change (*Allis* v. *Stafford*, 14 Hun, 418) none was intended or made as to what were to be deemed personal transactions and communications between witnesses and deceased persons. As regards this point section 829 has the same meaning as had the former sec-

* Post p. 166.

tion. We may then turn to the decisions under section 399 of the former Code for the true exposition of section 829 of the present Code. The point of inquiry now before us is, whether the excluded questions called for personal transactions or communications between the witnesses and the deceased. The current of reasoning and authority is that they did not. In all the cases where this subject has been considered, a distinction has been noted between those instances where the transaction sought to be proved has existed independent of any action or interference of the witness, and without any inducement or participation on his part, and those with which he was in some way connected. If the transaction be one wholly independent of the witness, neither induced by his solicitation or supported by his action, one with which he in no way interferes or joins, it cannot be one of a personal character as regards him. So it cannot be a personal transaction between him and the actor. A transaction is said to be "the act of performing," and transactor is "one who transacts or conducts any business or affairs." A transaction necessitates a transactor; and a personal transaction between two persons necessarily implies participation in it by both. So a personal communication between persons has been held, within the purview of section 399, to mean remarks and the imparting of ideas between persons who were addressing each other. It was held in *Simmons* v. *Sisson* (26 N. Y., 264, 277), that the prohibition declared by section 399 did not extend to conversations between the deceased and third persons, which were overheard by the witness, and it was there said that its "language has reference only to business done or negotiations carried on in person between the deceased and such party." It will be observed that this exposition of the section brings transactions and communications within the same rule of construction; that is, that the prohibition extended to such transactions and communications as were carried on in person between the deceased party and the witness, and to both transactions and communications alike. This decision received sanction in *Cary* v. *White* (59 N. Y., 336), where it is also said that the prohibition did not exclude matters not personal between the witnesses and the deceased. (See also *Hildebrant* v. *Crawford*, 65 N. Y., 107; *Kraushaar* v. *Meyer*, 72 id., 602; *Head* v. *Teeter*, 10 Hun, 548;

*Kale* v. *Elliott*, 18 id., 198.) If it be competent to prove what a person heard, it must be competent (the surrounding circumstances being the same) to prove what he saw. (*Franklin* v. *Pinkney*, 18 Abb., 186.) The rule of construction above suggested receives support in *Lobdell* v. *Lobdell* (36 N. Y., 333); *S. C.* (33 How., 347).

In conclusion then we are of the opinion that the next of kin of an intestate, although interested in the event of the suit, and also deriving their rights from him, through the plaintiff as administrator, may testify concerning the transactions of the deceased with which they had no personal connection; and also as to his communications in which they did not personally participate or take part. They could speak in regard to all facts within their knowledge bearing upon the issues, except those excluded by section 829, and that section only disqualified them from testifying to such transactions and communications as were had personally between them and the deceased. What they noticed and observed in his conduct and action with which they had no connection, and his communications by speech to others in their presence without inducement, suggestion or participation on their part, it was competent for them to state. It follows, therefore, that the questions above referred to were erroneously excluded.

It is suggested that the result must have been the same had the ruling here been the reverse of what it was. This suggestion has been already above answered; but we may give our conclusion on this point confirmation by referring to the closing sentence in *Hobart* v. *Hobart* (*supra*). Judge CHURCH, speaking for the court, says : " It is urged that these decisions would not have changed the result. This may be so; but we have no legal means of so determining. When the admission or rejection of evidence could not legitimately affect the result, the error will be disregarded; but it cannot be seen what facts might have been proved, nor can we say what influence such facts might have had upon the court who tried the cause." The conclusions above reached will necessitate a reversal of the judgment.

Judgment reversed, new trial granted, costs to abide the event.

LEARNED, P. J. :

I concur, but do not admit that in an equity case evidence improperly *admitted* requires a new trial. (See New Code, § 1003.)

BOARDMAN, J., concurred with LEARNED, P. J.

Judgment reversed, new trial granted, costs to abide event.